OPINION
Thomas J. Wiley is appealing the judgment of the Miami County Common Pleas Court convicting him of receiving stolen property and sentencing him accordingly.
On December 7, 2000, Wiley was indicted on one count of receiving stolen property in violation of R.C. 2913.51(A). He pled not guilty at his arraignment on December 15, 2000, and the case was set for trial on February 13, 2001. Wiley's trial counsel, Miami County Public Defender, John E. Hemm, filed a motion to withdraw as counsel of record on February 6, 2001. Hemm asserted that despite attempts to diligently represent Wiley, a conflict had arisen due to Wiley's insistence that he file a "variety of motions which counsel believes are not warranted and spurious in nature." Specifically, Wiley urged Hemm to file a "motion to suppress" Wiley's criminal record, and Wiley was insistent that Hemm file an unwarranted motion to dismiss for speedy trial purposes. In addition, Wiley withheld the name and address of an alleged "exculpatory witness."
A jury trial commenced on February 13, 2001. Just prior to trial, the trial court addressed Hemm's motion to withdraw. At that time, Wiley requested that the trial court allow him to "fire" Hemm and that a continuance be granted for him to seek new counsel. After much discussion, the trial court denied the request for a continuance and allowed Wiley to proceed pro se, but in the presence of Hemm. The jury found Wiley guilty of the receiving stolen property charge. The trial court sentenced Wiley to the maximum term of one year, and Wiley was given credit for 157 days.
Wiley now appeals the judgment of the Miami County Court of Common Pleas, asserting one assignment of error.
 The trial court's refusal to appoint new counsel or to continue the trial in order to allow Appellant to obtain new counsel was an abuse of its discretion which denied Appellant's right to an attorney per [the] Sixth Amendment to the U.S. Constitution.
Wiley argues that it was reversible error for the trial court to fail to appoint new counsel for him or, in the alternative, to grant his motion for a continuance. In particular, Wiley argues that a continuance was warranted due to his refusal to communicate and cooperate with Hemm, and because the trial court was aware that Wiley distrusted Hemm. Wiley also contends that it was an abuse of discretion for the trial court to permit him to proceed pro se, because the trial court had been aware of Wiley's limited literacy skills and his inability to understand the legal process. Furthermore, Wiley asserts that he was not attempting to frustrate or delay the judicial process.
A trial court's decision regarding a request for new counsel is governed by an abuse of discretion standard. State v. McNeill (1988),83 Ohio St.3d 438, 452. A review of a trial court's decision to grant or deny a continuance to retain new counsel consists of balancing the public's interest in the efficient, prompt and orderly administration of justice against any potential prejudice to the moving party. State v. Unger (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41. Factors a trial court should consider in evaluating the need for a continuance are:
 [T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of the case. (Citations omitted.)
Id. at 67-68, 21 O.O.3d at 43.
After reviewing the record, we find that Wiley's basis for his dissatisfaction with Hemm was unsubstantiated and did not warrant a change in counsel. At the hearing on the motion to withdraw, Hemm explained that Wiley had pressed him to file a "motion to suppress" so that the jury would not become aware of his criminal record. He also urged Hemm to file a motion to dismiss for speedy trial purposes and for lack of being served with the indictment. At the February 9, 2001 hearing, the trial court addressed all of Wiley's concerns and justified Hemm's actions. The trial court explained to Wiley that a motion to suppress was not the appropriate document to "suppress" his criminal record, and that the solution was for him not to testify at trial. The trial court denied Wiley's motion to dismiss, explaining to Wiley that because Hamilton County had placed a holder on him, his time for a speedy trial had not run. The trial court concluded that "it isn't going to do us any good to bring a new lawyer in, because if I brought a new lawyer in you'd be asking the new lawyer to do the same things you're asking Mr. Hemm to do, and in all likelihood that lawyer would say the same thing that Mr. Hemm is saying." (Feb. 9, 2001, Tr. 6)
At the February 12, 2001 hearing on Wiley's motion to dismiss, the trial court again spoke with Wiley about his concerns. Wiley argued that he had not been served with a copy of the indictment, and that Hemm could not be trusted because he was part of a conspiracy to falsify the transcript that proved otherwise. We note that at the hearing on the motion to dismiss, Wiley was provided with a certified copy of the indictment. Thereafter, the following exchange occurred on the record:
 MR. WILEY: How can you serve me with this, when this isn't even the Indictment they served me with a copy? They served me with — this looks nothing like the copy that they served me with. So how could they come up with one now? Original one now?
 THE COURT: It's not an original. That's a copy, it's a certified copy.
 MR. WILEY: Well, a true copy. How could they come up with a true copy now? When in fact at the time we was in the hearing they didn't have one. But how could they come up with one now?
 THE COURT: The record indicates that they served you with a copy of the Indictment at your arraignment.
 MR. WILEY: Of somethin' somebody made up, if it wasn't a true copy. Anybody could have made a copy. I could have got a copy. But it was never a true copy.
(Tr. 6.) Additionally, just prior to trial on February 13, 2001, Wiley informed the court that not only did he want a continuance to obtain counsel, but he did not want his new counsel to be from Miami County because attorneys from Miami County "work with [Hemm]" and work "together against [Wiley]." Finally, we note that Wiley continuously alleged to the trial court that the charges against him were false.
It is readily apparent that Wiley was searching for ways to delay his trial. Wiley's issues with Hemm amplified into issues with every lawyer in Miami County, in an attempt to have the trial court search for an attorney to represent Wiley. Any dissatisfaction he had with Hemm's performance as his attorney would have extended to Hemm's replacement. As such, Wiley's behavior justified the trial court's refusal to grant him a continuance and we do not find that the trial court abused its discretion in denying such.
Based upon the above mentioned reasons, we overrule Wiley's assignment of error.
The judgment of the trial court is affirmed.
BROGAN, J. and FAIN, J., concur.